IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM SIEGFRIED and MARLENE     )
SIEGFRIED, his wife,     )
     Plaintiffs,     )
     )
vs     )     Civil Action No. 09-125
     )     Judge Schwab
ALLEGHENY LUDLUM CORP., et al.,     )     Magistrate Judge Mitchell
     Defendants.     )

REPORT AND RECOMMENDATION

I.     <u>Recommendation</u>

It is respectfully recommended that the motion for remand submitted on behalf of

Plaintiffs (Docket No. 67) be denied.

II.     <u>Report</u>

Plaintiffs, William Seigfried (Seigfried) and his wife Marlene, filed this action in the

Court of Common Pleas of Washington County, Pennsylvania, raising product liability and

related claims against approximately 76 defendants, seeking damages for injuries Seigfried

sustained as a result of his exposure to asbestos fibers, resulting in his contracting malignant

mesothelioma. On February 2, 2009, Defendant General Electric Company (GE) removed the

case to this Court pursuant to the "federal officer removal statute," 28 U.S.C. § 1442(a)(1). GE

seeks transfer of this action to the United States District Court for the Eastern District of

Pennsylvania as a "tag-along action" pursuant to a July 29, 1991 order of the Judicial Panel on

Multidistrict Litigation (the Panel) coordinating all asbestos-related product liability cases in that

court.

That issue, however, must be determined by the Panel. Presently before this Court for

disposition is a motion to remand, brought by the Plaintiffs. For the reasons that follow, the motion should be denied.

Facts

Seigfried worked at various industrial sites as a bricklayer from 1956 through 1968 and from 1973 through 1987 including, but not limited to, Wheeling-Pittsburgh Steel in Allenport, Pennsylvania. He alleges that he was exposed to and inhaled asbestos dust and fibers, which caused him to contract malignant mesothelioma. His condition was diagnosed on November 13, 2007 and he indicates that he was unaware of and could not discover the nature and cause of the mesothelioma prior to November 13, 2007. (Compl. ¶¶ 75-78; Am. Compl. ¶¶ 75-78.)[1] As discussed below, Seigfried also revealed at some point during discovery that he served on two Navy ships from 1951 to 1954 and that he is alleging that he was exposed to asbestos from marine turbines manufactured by GE during this time.

Procedural History

Plaintiffs initiated this action by filing a complaint in the Court of Common Pleas of Washington County, Pennsylvania on April 3, 2008, Docket No. 2008-2523. An amended complaint was filed in July 2008. Named as defendants were numerous corporations that were engaged in the mining, milling, manufacturing, distributing, supplying, selling, using, recommending, installing or removing of asbestos and/or silica and other dangerous ingredients and products. Count I alleges a claim of products liability. Count II alleges that Defendants were negligent in that they produced, supplied and/or sold, used, specified or removed products containing asbestos and other dangerous ingredients including silica, which products they knew,

---

[1]    Notice of Removal (Docket No. 1) Exs. B; B.1.

or in the exercise of reasonable care, should have known, were inherently, excessively and ultra-hazardously dangerous to Seigfried. Count III is a loss of consortium claim by Seigfried's wife Marlene. Counts IV-VII are asserted solely against Defendant Metropolitan Life Insurance Company, which provided insurance coverage for various manufacturers of asbestos-containing products for many years.

On February 2, 2009, GE removed the action to this Court via § 1442(a)(1). The Notice of Removal asserts that GE manufactured marine steam turbines for installation on two Navy vessels on which Seigfried served between 1951 and 1954, and that it manufactured them subject to strict Navy control and supervision and thus it was acting under the direction of a federal agency. It further states that GE did not become aware of this connection–or that Seigfried was alleging GE's liability arising out of this exposure–until January 5, 2009, when Plaintiffs submitted Supplemental Product ID Answers to GE's First Set of Interrogatories. Thus, GE asserted that its removal of the action was timely. (Notice of Removal ¶ 5.)

On February 17, 2009, Plaintiffs filed a motion for remand pursuant to 28 U.S.C. § 1447(c). They argue that: 1) the removal was untimely because GE actually learned during Seigfried's deposition on May 6, 2008 that he was claiming exposure to asbestos while he served aboard the two Navy vessels, but it did not remove the case within thirty days thereafter or by June 5, 2008; 2) GE has not established a causal nexus because it asserts that it never incorporated asbestos into its turbines at all; and 3) GE has not made a colorable claim of a federal defense. They seek remand of the entire action to the Court of Common Pleas. In the alternative, Plaintiffs argue that the Court should sever and remand the non-naval claims to the Court of Common Pleas of Washington County, where the court stands ready to try the case.

GE responds that: 1) the removal was timely because Seigfried's deposition did not provide sufficient information for GE to know that he was alleging that he was exposed to asbestos from a GE product while serving on the two Navy vessels; 2) it has demonstrated a causal nexus between its products and Plaintiffs' claims; and 3) it has made a colorable claim of the federal contractor defense. It further argues that severance and remand of the non-naval claims is not appropriate and should be denied.

Timing of Removal

The timing for removal of actions to federal court is governed by section 1446(b) of Title 28, which provides that:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b). The majority of courts to have examined the issue, including three courts of appeals, have held that an answer given at a deposition which is transcribed constitutes an "other paper" for purposes of the second paragraph of § 1446(b). See Peters v. Lincoln Elec. Co., 285 F.3d 456, 465-66 (6th Cir. 2002); Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1078 (10th Cir. 1999); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996); Connolly v. Aetna U.S. Healthcare, Inc., 286 F. Supp. 2d 391, 398 (D.N.J. 2003). In

addition, a response to a written interrogatory constitutes an other paper.  See Durham v. Lockheed Martin Corp., 445 F.3d 1247 (9th Cir. 2006); Akin v. Ashland Chem. Co., 156 F.3d 1030, 1035 (10th Cir. 1998).

The remand statute provides in relevant part that:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c).  Plaintiffs' motion to remand was filed within 30 days of the date the case was removed to this Court and is timely.  Therefore, they may challenge the issue of whether the removal itself was timely, an issue which the Court of Appeals has described as a defect in removal procedure.  In re FMC Corp. Packaging Sys. Div., 208 F.3d 445, 449-51 (3d Cir. 2000).

As noted above, the Complaint and Amended Complaint allege that Seigfried was exposed to asbestos between 1956 and 1968 and between 1973 and 1987 at various industrial jobsites, but do not allege exposure during Seigfried's naval service between 1951 and 1954. (Compl. ¶¶ 75-76; Am. Compl. ¶¶ 75-76.)  Plaintiffs do not contend that the Complaint or the Amended Complaint contained sufficient information for GE to invoke federal officer removal. Nor do they assert that GE had enough information on April 30, 2008, when GE was served with Plaintiffs' Answers to Defendants' Short Form Interrogatories.  Although these answers state that Seigfried served in the Navy from 1950 to 1954, they do not list any asbestos exposure from any defendant's product during such service, the listing of Seigfried's work history does not include the period of his naval service and the listing of products at issue makes no mention of marine turbines or any product that can be attributed to such naval service.  (Notice of Removal Ex. D Answer Nos. 7, 24, 25, 26, 28, 30 & Exs. B, C.)

At his deposition on May 6, 2008, Seigfried testified that he served on the USS Yarnall and the USS Cockrell between 1951 and 1954, that he worked as a boiler tender, that he worked around "pipe covering" that contained asbestos and that he did not know who manufactured the boilers or the pipe covering on the Yarnall.  (Seigfried Dep. at 26, 30-31, 33-34, 72-73.)[2]

Plaintiffs contend that, based on this information, GE was put on notice as of May 6, 2008 that it had an objectively reasonable basis for invoking federal officer removal.  It is certainly accurate to observe that GE was notified on May 6, 2008 that Seigfried was alleging exposure to asbestos from his service aboard the USS Yarnall and the USS Cockrell.  However, the only asbestos he referenced was "pipe covering," which GE notes has never been alleged to be a GE product and when Seigfried was asked if he knew who manufactured the boilers or the pipe covering aboard the Yarnall, he said no.  In other words, Seigfried made no allegations of exposure to asbestos from GE turbines or any other products manufactured or supplied by GE during this deposition.

On July 28, 2008, Plaintiffs served upon GE's counsel responses to GE discovery requests, which specifically requested detailed information "for each and every instance of alleged exposure to asbestos upon which the claim against GE is based."  (Notice of Removal Ex. F.)  Plaintiffs responded with respect to jobsites at which Seigfried had worked: Wheeling Pittsburgh in Allenport, USX Clairton, USX Homestead, Bethlehem Steel in Johnstown and Allegheny Ludlum in Brackenridge.  However, no mention was made of exposure to asbestos from GE turbines or any other products during his naval service.  (Id. Product ID Answer No. 1.)

Finally, on January 5, 2009, Plaintiffs served on GE their Supplemental Product ID

---

[2]        Notice of Removal Ex. E.

Interrogatory Answers, in which they stated as follows:

> [Seigfried] served on the USS Yarnall from 1951 to 1953 and the USS Alvin C. Cockrell from 1953 to 1954. While aboard these ships, [Seigfried] was exposed to various GE asbestos-containing products. For information regarding these products, see the attached documentation.

(Notice of Removal Ex. G.) GE notes that the attached documentation identified marine turbines aboard the Yarnall and the Cockrell that were manufactured or designed by GE. Thus, it contends that this was the first time it had notice of the fact that Seigfried was alleging exposure to asbestos from GE products on the ships during his naval service and it filed its notice of removal within 30 days of the receipt of these Supplemental Product ID Answers.

Plaintiffs contend that GE should be "judicially estopped" from arguing that it was unaware of the basis for federal officer removal until it received the supplemental interrogatory response. They point out that, in the case of Lindemann v. Foster-Wheeler Corp., Civ. A. No. 06-244 (W.D. Pa. 2006), GE filed a Notice of Removal within thirty days of receipt of a complaint that contained the following allegation: "Mr. Lindemann's asbestos exposure history included exposure from the U.S. Navy onboard the U.S.S. John King and the U.S.S. Yosemite from 1957 until 1962." (Docket No. 68 Ex. C at 3 ¶ 6.) As in this case, the Lindemann complaint asserted claims against many defendants and did not identify GE as the manufacturer of turbines aboard the ships. Plaintiffs observe that, based on the allegations of the complaint alone, GE determined that it had supplied turbines to those two vessels and thus it alleged that the case was removable. Moreover, they contend that removal in that case was successful, as they claim that the case was transferred by the Panel without any hearing on a motion to remand.

However, as GE notes, the docket sheet in that case does not reflect the filing of a motion to remand and no such motion was filed in the case. Thus, describing removal as "successful" on

7

the basis that it survived a motion to remand is not accurate.

The Court of Appeals has described the doctrine of judicial estoppel as follows:

> Although a court's decision to apply judicial estoppel is not subject to "inflexible prerequisites or an exhaustive formula," New Hampshire v. Maine, 532 U.S. 742, 751, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), Supreme Court and Third Circuit precedent demonstrate that some aggravating factor, and not mere inconsistency, is necessary for the application of judicial estoppel. The Supreme Court has identified several factors that "inform" a court's decision regarding whether to apply judicial estoppel. Not only must the court find that a party adopted inconsistent positions, but it should also consider whether the party succeeded in convincing a tribunal to accept its position and whether the party would derive an unfair advantage in the absence of estoppel. Id. at 750-51, 121 S.Ct. 1808. Our Court's decisions instruct that judicial estoppel has three threshold requirements: first, the party in question must have adopted irreconcilably inconsistent positions; second, the party must have adopted these positions in "bad faith"; and third, there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319-20 (3d Cir. 2003) (quoting Montrose Med. Group Participating Savings Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001)). We have also endorsed the view that judicial estoppel is an extreme remedy, to be used only "when the inconsistent positions are 'tantamount to a knowing misrepresentation to or even fraud on the court.'" Krystal, 337 F.3d at 324 (quoting Total Petroleum, Inc. v. Davis, 822 F.2d 734, 738 n. 6 (8th Cir.1987)).

Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 n.5 (3d Cir. 2008).

GE argues that none of these factors are present here: its positions in Lindemann and this case are not irreconcilably inconsistent, there is no evidence that it adopted its positions in "bad faith" and Plaintiffs do not even argue that its positions are tantamount to a knowing misrepresentation to or even fraud on the court. In Lindemann, the complaint informed the defendants that asbestos exposure from their products included specific naval vessels, whereupon GE determined that it had supplied marine turbines to these vessels and removed the case. Here, by contrast, the complaint alleged exposure beginning after Seigfried's naval service, the deposition testimony made no reference to GE or its products (but instead referred to pipe

coverings, which are not a GE product) and only in their supplemental responses to interrogatories did Plaintiffs indicate that GE turbines exposing Seigfried to asbestos were present on the two Navy ships.

Upon review of the relevant factors, the Court concludes that it is not appropriate to apply judicial estoppel in this case. The facts and sequence of events regarding the Lindemann case and this case are different, there is no evidence that GE took its positions in bad faith and Plaintiffs have not argued or demonstrated that GE's positions are tantamount to a knowing misrepresentation to or even fraud on the court.

Plaintiffs contend that the mere mention of the names of the two ships at Seigfried's deposition should have been sufficient to alert GE that its turbines were aboard, even though Seigfried himself identified only pipe coverings as the potential asbestos source and even though no change had been made to the period of exposure as alleged in the complaint, which was identified as beginning after Seigfried's naval service. GE denies that this information was sufficient under the circumstances.

In Good v. Armstrong World Industries, Inc., 914 F. Supp. 1125 (E.D. Pa. 1996), the same issue was presented: did Westinghouse have enough knowledge to remove the case when it received answers to interrogatories identifying certain Navy vessels on which the plaintiff alleged he had been exposed to asbestos, or not until it received an affidavit he signed in which he stated that he had been exposed to asbestos in generators manufactured by Westinghouse? The district court stated as follows:

> I suspect that as soon as plaintiffs named in the Answers the specific navy vessels on which the alleged asbestos-producing turbine generators were located, Westinghouse had notice that its liability for asbestos injuries could result from its involvement with the design and manufacture of the turbines on the named ships.

> However, the record before the Court does not support my suspicions. Therefore, I will accept the contention of Westinghouse that it filed its notice in a timely manner and proceed to the merits of this motion.

Id. at 1127. See also Durham, 445 F.3d at 1249 (Lockheed was first put on notice of potential federal officer removal when it received plaintiff's answers to interrogatories in which he stated that he was exposed to asbestos while working on two military aircraft on military bases where Lockheed was a contractor); Hilbert v. McDonnell Douglas Corp., 529 F. Supp. 2d 187, 195 (D. Mass. 2008) (complaint notified defendants that the plaintiff was exposed to asbestos while he was employed with the Navy as an aircraft mechanic, but his deposition detailed specific aircraft he worked on and the manufacturer responsible for making the brakes of each aircraft and this information was sufficient to start the removal period); Contois v. Able Indus., Inc., 523 F. Supp. 2d 155, 158-59 (D. Conn. 2007) (complaint alleging that decedent was exposed to asbestos while he served in the Navy from 1951 to 1955 and while working as an electric engineer from 1962 to 2002 was insufficient, and interrogatory responses naming ships still did not inform defendants about specific asbestos-containing products, but export report identified turbines and provided defendants with sufficient information to remove).

Plaintiffs point to no authority that would require GE to investigate each time it hears the name of a Navy vessel to determine whether it manufactured an asbestos-containing product that was on that vessel, especially when the plaintiff does not assert exposure to asbestos during the time of naval service or refers to products on the vessels not produced by GE, and the only case that appears to have addressed the question has concluded that it has no such obligation. Therefore, GE has established that its removal of this case within thirty days of receiving the supplemental interrogatory answers was timely.

<u>Federal Officer Removal</u>

GE removed this action pursuant to the federal officer removal statute, which provides as follows:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). This statute does not require agreement of other defendants as it is a unique right to remove the entire case available to any defendant, <u>Akin</u>, 156 F.3d at 1034, and although the removing defendant bears the burden of proving federal jurisdiction, the Supreme Court "has made clear that the statute must be 'liberally construed.'" <u>Watson v. Philip Morris Cos.</u>, 127 S.Ct. 2301, 2305 (2007) (citations omitted).[3]

The statute requires a removing party to establish that:

> (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

<u>Feidt v. Owens Corning Fiberglas Corp.</u>, 153 F.3d 124, 127 (3d Cir. 1998) (citing <u>Mesa v. California</u>, 489 U.S. 121, 129 (1989); <u>Willingham v. Morgan</u>, 395 U.S. 402, 409 (1969)).

---

[3]      Plaintiffs' citation to <u>Boyer v. Snap-on Tools Corp.</u> for the proposition that removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand," 913 F.2d 108, 111 (3d Cir. 1990), is inapposite, as <u>Boyer</u> concerned removal under § 1441, not § 1442(a)(1).

Plaintiffs challenge the third and fourth prongs of this test.  Specifically, they contend that: 1) although the statute amounts to a claim that "the government made me do it," GE states that it never incorporated asbestos into its turbines at all, and GE's generalized affidavits expressing the opinion that GE would not have been allowed to post warnings about asbestos exposure on Navy ships do not demonstrate that the government instructed it not to do so; and 2) GE cannot make a colorable claim to the government contractor defense with these affidavits, which do not rebut the inference that GE never tried to warn about asbestos at all.

GE responds that: 1) it has established a causal nexus with Plaintiffs' claims (namely that GE supplied turbines which exposed Seigfried to asbestos) and the fact that GE will defend the case by arguing, inter alia, that it did not supply or install the asbestos material into the turbines is irrelevant for purposes of federal officer removal; and 2) Plaintiffs have not asserted a failure to warn claim, they have not contested either the government contractor defense or the causal nexus requirement with respect to their design defect claims and GE has adequately established that warnings of asbestos hazards with respect to its products would have been prohibited by the Navy.

<u>Causal Nexus Between Claims and Conduct Performed Under Color of Federal Office</u>

GE asserts that it was acting under strict Navy control and supervision when it manufactured and designed the turbines, including, without limitation, the presence of asbestos in the turbines and the existence of any warnings affixed to or issued in connection with the turbines.  To support these assertions, GE has submitted the following: 1) the declaration of

David Hobson, dated January 28, 2008, with exhibits 1 through 3;[4] 2) the declaration of Admiral Ben J. Lehman, dated January 28, 2008;[5] and 3) the declaration of Lawrence Stillwell Betts, MD, PhD, dated February 21, 2008, with exhibits A through EE.[6]

Hobson, who worked for GE for many years as Manager of Navy Customer Service for GE's Navy and Small Steam Turbine Department in Fitchburg, Massachusetts, states that the Navy had detailed specifications and procedures regarding every aspect of Navy ships and directed the contractors with respect thereto through the Inspector of Naval Machinery ("INM") or the Naval Sea Systems Command ("NAVSEA"). He also states that thermal insulation materials (which might have contained asbestos) were not included in Navy turbines manufactured by GE, but were installed later on the ships by other manufacturers and that GE was not involved in this process. (Hobson Decl. ¶ 19.) Hobson further attests that the Navy exercised extensive control over communications between equipment manufacturers such as GE and Navy personnel, that GE would not have been permitted to affix any type of warning to a Navy turbine or to insert a warning in the manual that addressed alleged hazards of products that were not supplied by GE and that if GE had attempted to do so, the turbine or manual would have been out of compliance with the Navy's contract specifications and would have been rejected. (Hobson Decl. ¶¶ 20-22.) Admiral Lehman confirms the level of control by the Navy over the manufacturing and design of its ships. (Lehman Decl. ¶¶ 3, 5-7.)

Betts, a retired Navy Captain and doctor specializing in occupational medicine, states that

---

[4]     Notice of Removal Ex. H.

[5]     Notice of Removal Ex. I.

[6]     Notice of Removal Exs. J.001-J.026.

the Navy had state-of-the-art knowledge about the health hazards involved in using asbestos, far

in excess of knowledge possessed by manufacturers such as GE, that it had a robust program to

control exposure of personnel and monitor their health, and that it would not have accepted

unsolicited and gratuitous comments from equipment manufacturers about hazards associated

with products that they neither made nor sold and about which the Navy was already aware.

(Betts Decl. ¶¶ 1, 32.)

Plaintiffs may be arguing that the statute requires GE to allege that it acted under the

direction of a specific federal officer when it installed asbestos on Navy ships, rather than

referring to the Navy generally, a conclusion that finds support in the Good opinion. 914

F. Supp. at 1128-30 (even though Westinghouse designed and manufactured the equipment in

accordance with the specifications and regulations mandated by the Navy, it failed to

demonstrate that it was acting under the direct control of the Secretary of the Navy as suggested

in the notice of removal). To the extent they are doing so, however, it is noted that this case is

distinguishable from Good because GE states that it was acting under the direction of the INM,

and that the Good court's highly literal reading of the statute has been rejected by a number of

courts. See Mitchell v. AC & S, Inc., 2004 WL 3831228, at *3-4 (E.D. Va. Dec. 15, 2004)

(Westinghouse averred that it acted under the control of officers of the Navy, including INM,

which was distinguishable from Good, and literal approach of Good not supported by majority of

other courts to consider the issue); Crocker v. Borden, Inc., 852 F. Supp. 1322, 1326 (E.D. La.

1994); Carter v. AC & S, Inc., 2002 WL 31682352, at *4-5 (E.D. Tex. June 27, 2002).

Plaintiffs contend that, because GE has stated that it was not involved in any asbestos

placement, it cannot contend that it was operating under the direct and detailed control of an

officer of the United States with respect to the asbestos at issue here. However, as GE responds, Plaintiffs have confused two issues. GE need only demonstrate a nexus between Plaintiffs' claims and GE's products, not a nexus between GE's products and its potential defenses to the case. Plaintiffs allege and state that they intend to establish at trial that GE did in fact supply marine turbines that contained asbestos. GE's response to this allegation for purposes of § 1442(a)(1) is that the turbines were produced in accordance with strict naval specifications and oversight. A court must "credit Defendants' theory of the case when determining whether a causal connection exists." Isaacson v. Dow Chem. Co., 517 F.3d 129, 137 (2d Cir. 2008) (citation omitted). Thus, GE has established a nexus between the claim and its products.

With respect to the failure to warn claim, Plaintiffs note that, in the Feidt case, the district court rejected a company's attempt to make this same argument with respect to turbines, finding that:

> Nothing in the specifications or other directions of the Department of Navy or its officers precluded Westinghouse from affixing to its turbines, or otherwise supplying to those who would come into contact with them, adequate warnings of the potential dangers of asbestos.

Feidt Op. Letter, Civ. A. No. 96-4349, at 3.[7] As observed by the Court of Appeals:

> the district court found that removal was inappropriate because Westinghouse failed to establish the necessary causal connection between the conduct upon which Feidt's claim of state law liability was based-the failure to warn-and the conduct Westinghouse allegedly performed under federal direction-its federal military contract obligations. In particular, the district court held that Westinghouse did not present evidence that the Navy prohibited it from issuing warnings with respect to the use of asbestos insulation.

---

[7]    Docket No. 68 Ex. D.

Feidt, 153 F.3d at 127.[8]  In Good, the court concluded that the affidavits established only that Westinghouse was acting generally under the Navy's supervision, but did not assert that a particular officer actually required the use of asbestos or actually prohibited warnings related thereto:  "Neither the notice nor the affidavit establishes that a federal officer required the use of asbestos in the design and manufacture of the turbine generators.  In fact, neither of those documents relied on by Westinghouse even mention asbestos." 914 F. Supp. at 1130.

On the other hand, a number of district courts have held that general affidavits like the ones presented in this case were sufficient to demonstrate that the Navy had complete control over the manufacture and design of every piece of equipment on its ships as well as the nature of the warnings issued and that contractors were not allowed to deviate from these specifications. See Marley v. Elliot Turbomachinery Co., 545 F. Supp. 2d 1266, 1274 (S.D. Fla. 2008) (defendants did not have to show that the Navy actually prohibited asbestos warnings to establish a causal nexus and affidavits of Admirals Lehman and Horne were sufficient); Harris v. Rapid American Corp., 532 F. Supp. 1001, 1005 (N.D. Ill. 2007) (same conclusion, affidavits by Admiral Lehman and naval architect Charles Cushing); Contois, 523 F. Supp. 2d at 161 (same, affidavits by Admirals Horne and Lehman, Lawrence Betts and others); Machnik v. Buffalo Pumps, Inc., 506 F. Supp. 2d 99, 102-04 (D. Conn. 2007) (same, affidavits by Lehman and Betts); Nesbiet v. General Elec. Co., 399 F. Supp. 2d 205, 212-13 (S.D.N.Y. 2005) (same, affidavits by Hobson, Lehman and Betts); Fink v. Todd Shipyards, 2004 WL 856734, at *4 (E.D.

---

[8]     The district court stayed its remand order and certified for interlocutory appeal the issue of whether the action was subject to removal.  The Court of Appeals dismissed the appeal for lack of jurisdiction.  Thus, the discussion about the district court's decision by the Court of Appeals is limited to a determination of whether the remand was based on a ground enumerated in § 1447(c) and whether § 1447(d) prohibited appellate review.

La. Apr. 20, 2004) (nexus demonstrated by Hobson affidavit); <u>Delancey v. General Elec. Co.</u>, 2004 WL 3247173, at *2 (E.D. La. Mar. 31, 2004) (same, nexus demonstrated via Hobson affidavits).  <u>See also</u> <u>Isaacson</u>, 517 F.3d at 138 (chemical companies did not have to demonstrate that the government specifically contemplated dioxin contamination when it contracted for the production of Agent Orange; it was enough that the contracts gave rise to it as a byproduct).

This Court finds that GE has established a causal nexus, based on the reasoning of the numerous courts cited above.  Contrary to the facts in the <u>Good</u> case, here the affidavits specifically refer to the INM as the federal officer who directed GE's performance.  Moreover, the <u>Good</u> court's requirement that a federal officer directly order the use of asbestos by a defendant in order to demonstrate a causal nexus is not consistent with the purposes of the federal officer removal statute.  <u>See</u> <u>Jefferson County, Ala. v. Acker</u>, 527 U.S. 423, 432 (1999) ("Just as requiring a 'clearly established defense' rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits [of the defendant's claim to immunity] in order to show the required causal connection.") (citation omitted).

<u>Colorable Claim to a Federal Defense</u>

The Supreme Court has held that a defendant asserting a colorable federal defense for § 1442(a) removal is not required to virtually win his case before having it removed.  <u>Jefferson County</u>, 527 U.S. at 431.  GE's asserted defense is government contractor immunity from liability, which shields contractors from liability under state tort law for defects in military equipment supplied to the United States when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned

the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle v. United Techs. Corp., 487 U.S. 500, 512 (1988). See also Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003-04 (7th Cir. 1996) (same standard as Boyle, a design defect case, applied in a failure-to-warn case).

GE argues that the Court of Appeals has recognized the government contractor defense as a federal defense for purposes of the federal officer removal statute, citing Carley v. Wheeled Coach, 991 F.2d 1117 (3d Cir. 1993). However, that case was brought under diversity jurisdiction and did not involve the issue of federal officer removal. Id. at 1118. The court held that the federal contractor defense is available to private contractors, but that the contractor in the case failed to demonstrate that it met the third prong of the defense, namely that it warned the United States about the dangers in use of the equipment known to it but not the United States.

In the Feidt case, the Court of Appeals noted that:

> the district court approved the policy analysis in Good v. Armstrong World Indus., Inc., 914 F. Supp. 1125, 1131 (E.D. Pa. 1996). In particular, the district court quoted the section of Good in which the court found that the litigation in federal court of the government contractor defense would not further the purposes underlying the federal officer removal statute, namely the threat to the enforcement of the implementation of a federal policy and the concern for state court manipulation of federal defenses. See Good, 914 F. Supp. at 1131. The district court found that this conclusion was valid in this case and further supported its remand determination.

Feidt, 153 F.3d at 127. As noted above, however, the Court of Appeals did not reach the merits of the § 1442(a)(1) removal in the Feidt case. Rather, it determined only that the remand was based on a ground enumerated in § 1447(c) and dismissed the appeal for lack of jurisdiction.

In Good, the court concluded that, although Westinghouse met the requirement of presenting a colorable claim to a federal defense, when the defense was examined in light of the

purpose of the federal officer removal statute, it demonstrated that removal was not appropriate. Specifically, the court noted that the federal interest in civil liability arising out of the performance of federal procurement contracts could not be reconciled with the fact that asbestos was no longer used in the design and manufacture of equipment, so that the lawsuit could not interfere with a federal program involving products that contain asbestos. "Therefore, the adjudication of this personal injury action in state court does not threaten the enforcement of a federal policy sufficient to warrant removal." 914 F. Supp. at 1131. Moreover, even assuming that the federal interest underlying the government contractor defense was present, the court observed that simply noting the presence of a federal interest did not provide a sufficient basis to allow removal:

> When enacting the federal officer removal statute, Congress sought to distinguish lawsuits on the basis of their susceptibility to state court manipulation. The government contractor defense is not subject to such manipulation. Unlike a federal officer's defense of immunity, the government contract defense by a corporation raises straightforward common law issues that state courts are as adept at handling as the federal judiciary.

Id. (citation omitted).

Nevertheless, more recently, three courts of appeals have affirmatively held that the government contractor defense is a colorable federal defense under § 1442(a)(1). Isaacson, 517 F.3d at 139 (Second Circuit). See also Durham, 445 F.3d at 1250-51 (Ninth Circuit) (government contractor defense is a substantive rule of law permitting removal under § 1442(a)(1)); Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387 (5th Cir. 1998) (same); Wright v. A.W. Chesterton Co., 2008 WL 512728 (N.D. Cal. Feb. 25, 2008); Machnik, 506 F. Supp. 2d at 102-03. No court of appeals has held to the contrary. This Court concludes that the government contractor defense is a colorable federal defense for purposes of § 1442(a)(1).

Plaintiffs cite the Hilbert court's rejection of the removing defendants' attempt to claim that they met the first factor of the government contractor defense when the proffered affidavits suggested only speculation that, had the contractors tried to affix warnings regarding asbestos, the Navy would have disregarded these attempts. 529 F. Supp. 2d at 200-03. Because the defendants did not demonstrate that the government issued reasonably precise specifications as to warnings, they did not establish that the plaintiffs' harms were caused by the contractors' responsibilities and the causal connection was not met. Id. at 203. Some other district courts have followed this rationale. See Sether v. Agco Corp., 2008 WL 1701172 (S.D. Ill. Mar. 28, 2008) (affidavits insufficient for federal officer removal); Williams v. General Elec. Co., 418 F. Supp. 2d 610 (M.D. Pa. 2005) (affidavits by Hobson and Lehman that only generally described GE's production and Navy oversight and which stated that asbestos was in the thermal insulation not supplied by GE were insufficient);[9] Green v. A.W. Chesterton Co., 366 F. Supp. 2d 149 (D. Me. 2005) (same); Freiberg v. Swinerton & Walberg Property Servs., 245 F. Supp. 2d 1144 (D. Colo. 2002) (same).

GE responds that Hilbert and the other cases upon which Plaintiffs rely concern only failure-to-warn claims, not claims for design defects as well. As GE observes, Plaintiffs have not addressed the design defect claim and GE has demonstrated a colorable defense to it. Because GE has demonstrated a colorable defense to the design defect claim, the case "is properly removable to federal court so long as they have a military contractor defense to any of the plaintiff's claims." Contois, 523 F. Supp. 2d at 165.

---

[9]    It is noted that the affidavit submitted by Hobson in the Williams case was not the more extensive affidavit he submitted in subsequent cases and that he has submitted herein.

Contrary to the Hilbert case and some other cases cited above, a majority of courts have held that, because federal officer removal is to be broadly construed and because the removing defendant only has to assert a colorable claim to a federal defense, affidavits such as those produced in this case are sufficient. See Marley, 545 F. Supp. 2d at 1273-74; Harris, 532 F. Supp. 2d at 1004; Carroll v. Buffalo Pumps, Inc., 2008 WL 4793725, at *3 (D. Conn. Oct. 27, 2008) (affidavits by Hobson, Lehman and Betts); Contois, 523 F. Supp. 2d at 160-61; Machnik v. Buffalo Pumps, Inc., 506 F. Supp. 2d 99, 102-04 (D. Conn. 2007) (affidavits by Lehman and Betts); Nesbiet, 399 F. Supp. 2d at 211-12; Mitchell, 2004 WL 3831228, at *4 (affidavits by Admiral Horne and former Westinghouse designer James Gate); Fink, 2004 WL 856734, at *3-4; Delancey, 2004 WL 3247173, at *2-3; Carter, 2002 WL 31682352, at *4-5 (affidavit by Gate); Madden v. Able Supply Co., 205 F. Supp. 2d 695, 701 (S.D. Tex. 2002) (same); Crocker v. Borden, Inc., 852 F. Supp. at 1327 (same).

Plaintiffs suggest that GE is attempting to "eat its cake and have it too" by first arguing (for purposes of removal) that it was acting under the direction of a federal officer when it manufactured and installed turbines that contained asbestos and later (for purposes of defending the case) that it had no involvement in manufacturing or installing the asbestos-containing thermal insulation. However, particularly with respect to the failure to warn claim, the fact that GE did not install the asbestos-containing thermal insulation may not be a meritorious defense. See Chicano v. General Elec. Co., 2004 WL 2250990 (E.D. Pa. Oct. 5, 2004) (denying GE's motion for summary judgment because, under Pennsylvania law, it might have had a duty to warn about exposure to asbestos when it knew the Navy would incorporate this dangerous substance into the finished product).

The Court concludes that GE has demonstrated a colorable claim to a federal defense, for the reasons articulated in the many cases cited above. The affidavits by Admiral Lehman, Betts and Hobson are sufficient to establish that the Navy had precise specifications, that GE conformed to these specifications and that the Navy had superior knowledge to GE about the dangers posed by the use of asbestos and would not have accepted warnings by GE other than those approved by the Navy itself. GE has demonstrated that it has met all elements of the removal statute and Plaintiffs' motion to remand should be denied.

<u>Severance</u>

In the alternative, Plaintiffs argue that, if the Court finds that this case was properly removed by GE, it should sever the non-naval claims and remand them to the Court of Common Pleas of Washington County, pursuant to either 28 U.S.C. § 1441(c) or 28 U.S.C. § 1367(c)(2). They contend that, because the non-naval claims arise under Pennsylvania law and are not subject to any federal defense, they predominate and that remand of these claims will promote justice and economy.

GE responds that: 1) § 1441(c) does not apply; and 2) the effect of remanding the non-naval claims under § 1367(c)(2) would be to create complexities in two courts and numerous factors counsel against doing so. Plaintiffs have not addressed these arguments.

Section 1441(c) provides that:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c). Thus, it applies only where federal jurisdiction is based upon the existence

of a federal question under 28 U.S.C. § 1331.  Removal in this case is based upon the existence

of a federal defense under § 1442(a)(1) and § 1441(c) does not apply.

Under the Judicial Improvements Act of 1990, the Court has supplemental jurisdiction

over all of the non-naval claims in the Amended Complaint.  The statute provides that "[e]xcept

as provided in subsections (b) and (c)," federal courts "shall have supplemental jurisdiction" over

claims which are "part of the same case or controversy" as a claim over which the court exercises

original jurisdiction.  28 U.S.C. § 1367(a).

"Claims are part of the same constitutional case if they 'derive from a common nucleus of

operative fact,' and 'are such that [the plaintiff] would ordinarily be expected to try them all in

one judicial proceeding....'"  Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) (quoting

United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).  In this case, all of Plaintiffs' claims

arise under state law and they clearly derive from a common nucleus of operative fact with the

naval claims, which are removable only because of the federal officer removal statute based on

GE's defense.

Subsection (c), however, provides that a district court may, in its discretion, decline to

exercise jurisdiction if any of four conditions are met.  One of these conditions is (c)(2), which

permits dismissal when "the claim substantially predominates over the claim or claims over

which the district court has original jurisdiction."

In Borough of West Mifflin v. Lancaster, 45 F.3d 780 (3d Cir. 1995), two shopping mall

patrons brought an action in the Court of Common Pleas of Allegheny County against the

Borough of West Mifflin and a borough officer, owners, supervisors, and security officers of the

mall, alleging various state law claims, and a § 1983 claim alleging conspiracy to deprive them of

their civil rights through harassment, assault, false arrest, malicious prosecution and abuse of process in violation of the Fourth, Fifth and Fourteenth Amendments. When the action was removed to federal court under § 1331 on the basis of the federal question claim, the plaintiffs moved for remand on the grounds that state law issues predominated. The district court granted the motion pursuant to § 1441(c), but the Court of Appeals reversed on the grounds that the claims were not "separate and independent." As noted above, Plaintiffs have cited no authority that would permit application of § 1441(c) in a situation in which the removal was based on § 1442(a)(1).

In addition, the Court of Appeals discussed the application of § 1367(c)(2). The court noted that

> the "substantially predominates" standard of § 1367(c)(2) comes from <u>Gibbs</u>. It is important to recognize that this standard was fashioned as a limited exception to the operation of the doctrine of pendent jurisdiction–a doctrine that seeks to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact. When a district court exercises its discretion not to hear state claims under § 1367(c)(2), the advantages of a single suit are lost. For that reason, § 1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served be relegating state claims to the state court. This will normally be the case only where "a state claims constitutes the real body of a case, to which the federal claim is only an appendage," <u>Gibbs</u>, 383 U.S. at 727, 86 S. Ct. at 1140–only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.

<u>Id.</u> at 789.

Thus, although the court did not foreclose the district court from applying § 1367(c)(2), the opinion suggests that this subsection should be used very rarely, particularly because it would result in parallel state and federal cases arising out of the same incidents. In this case, as GE observes, because removal is based not on a federal question but upon a federal defense, the

exact same state law will govern both the naval claim and the non-naval claims and parallel cases would be created.  For this reason, it would be counterproductive to sever and remand the non-naval claims.  GE cites another district court case involving asbestos exposure and federal officer removal, in which the court stated as follows:

> Plaintiff also urged the court to exercise its discretion and remand all of the claims over which it has supplemental jurisdiction.  Plaintiff failed to address the complexity or consequences of litigating this case in both federal and state court. Even if state law issues predominate, the effects of conducting discovery, as well as the multiplication of effort and resources, on the removing defendants and the other parties must be considered.  In the circumstances of this case, severing the strict premises liability claims against Northrop and remanding the claims over which the court has supplemental jurisdiction is not warranted.

Kluka v. Anco Insulations, Inc., 2008 WL 2444517, at *4 (M.D. La. Apr. 28, 2008).

Similarly, Plaintiffs have not addressed the complexity or consequences of litigating this case in both state and federal court simultaneously.  GE points to the following factors that counsel against severance and remand of the non-naval claims: 1) Plaintiffs have sued more than 70 defendants, alleging joint and several liability; 2) all of the claims arise under state law, including the claims against GE for exposure to asbestos; 3) each defendant has cross-claims against all other defendants for indemnity and contribution and as a result GE is subject to claims for contribution and indemnity from each and every other defendant in this action.

These factors counsel against severance in this case.  Given the number of defendants and cross-claims and the fact that all claims arise under state law, this case should be heard in a single forum.  Because Plaintiffs' motion to remand should be denied, that forum will either be this Court or the District Court for the Eastern District of Pennsylvania, should the Panel elect to transfer this case there.

For these reasons, it is recommended that the motion for remand submitted on behalf of

Plaintiffs be denied.

By the date set in the Notice of Electronic Filing, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: March 25, 2009